IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SAMUEL UPTHEGROVE,

                Plaintiff,

   v.

KEVIN CARR, KEVIN KALLAS,
SCOTT ECKSTEIN, STEVE SCHEULER,
JOHN KIND, RYAN BAUMANN, and
JAY VAN LANEN,

                Defendants.

OPINION & ORDER

Case No. 18-cv-847-wmc

On January 24, 2020, *pro se* plaintiff Samuel Upthegrove filed a motion for an emergency restraining order, asking the court to direct defendants to release him from restrictive housing at Green Bay Correctional Institution ("GBCI"), and reporting that he had been committing self-harm. (Dkt. #46.) The court directed defendants to submit a status report updating how staff at GBCI have been addressing Upthegrove's mental health needs and in particular handling his reported acts of self-harm. Last week, the court received defendants' response (dkt. #48), as well as Upthegrove's own status report (dkt. #49). Having reviewed those materials, this opinion will: (1) address concerns Upthegrove most recently raised about the public disclosure of his medical records and treatment; (2) deny Upthegrove's motion; and (3) discuss the next steps of this lawsuit.

## I.    Upthegrove's Medical Records and Treatment

Upthegrove objects to defendants' public filing of his medical records along with their response to his emergency motion, a concern that his medical records show he has

raised with his mental health providers at GBCI. Defendants' response is both disappointing and wrong-headed, suggesting that (1) Upthegrove has not revoked his authorization for his release of protected health information and (2) in any event, the court ordered defendants to produce his medical records to assess Upthegrove's claimed need for court intervention.

To be sure, information relating to how GBCI staff has been handling Upthegrove's need for mental health treatment are presumptively part of the unsealed record of this proceeding. *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831 833 (7th Cir. 2013) ("Documents that affect the disposition of federal litigation are presumptively open to public view."). Indeed, given that Upthegrove has chosen to put his mental health treatment at issue in this lawsuit, and again asks the court to step in to ensure that he is receiving adequate treatment, this time on an emergency basis, he should understand that the court will need to review portions of his medical records to assess his request for relief, and that relevant portions may even find their way into the court's publicly issued opinions and defendant's public briefing. That said, his motion hardly authorizes GBCI to perform a public dump of *all* of plaintiff's medical records, even with a waiver in place and without an explicit order from the court.

Moreover, the presumption in favor of public disclosure of even relevant medical information can be rebutted if the party seeking to conceal documents demonstrates "compelling reasons of personal privacy." *Id.* Here, while Upthegrove appears to appreciate that all filings in this lawsuit are presumably publicly available, the unnecessary public disclosure of his mental health records *may* be contributing to Upthegrove's mental

health deterioration, in addition to being wholly unnecessary. Indeed, Upthegrove's ongoing symptoms, coupled with the broad array of medical records that have been submitted in this matter, provide compelling reasons to seal his treatment records, as well as any detailed statements by his mental health providers, from the public record of this lawsuit. Accordingly, the court has sealed those records (dkt. ##34, 43, 43-1, 48-1, 48-2, 48-3), and will direct the parties to seal any other of Upthegrove's medical records that may be filed related to Upthegrove's mental health in this case. However, *most* relevant information from Upthegrove's medical files that the parties rely in briefing issues before this court will remain publicly available, as will the court's opinions that touch on issues arising out of plaintiff's medical care, as is true in the next portion of this opinion.

## II.     Motion Seeking Removal from Restrictive Housing

Turning to the merits of Upthegrove's request, the court starts by providing an overview of Upthegrove's recent self-harm and how GBCI staff have responded. Upthegrove appears to have refused to take his prescribed psychiatric medication (Citalopram) starting December 27, 2019, and a week later he got into a fight with another prisoner and was placed in temporary lockup. On January 2, 2020, Upthegrove met with his psychological services clinician, and he explained his stopping medication because of its adverse side effects. In response, the clincian encouraged him to work with his psychiatrist to find a different medication. On January 6, Upthegrove further gave up razors he had accumulated to his psychologist to avoid cutting himself.

On January 9, Upthegrove was found guilty of assaulting another inmate and punished with 60 days of disciplinary separation in restrictive housing. That same day, Upthegrove reported feeling upset because he did not have his property, and on January 10, Upthegrove reported to his psychologist that he was cutting himself. While Upthegrove did not want to go to clinical observation status, he did discuss with the psychologist what he could do instead of engaging in self-harm.

Since that time, mental health clinicians have met with Upthegrove on January 15, January 17, twice on January 22, twice on January 23, January 24, and January 27. Upthegrove was also placed on clinical observation status from January 19 through 21. On January 21, Upthegrove reported that he was angry about this lawsuit and being in restrictive housing, reportedly admitting that he may have been acting out to prove to the court he needs more aid in this lawsuit. (Ex. 1009 (dkt. #48-1) 22.) That same day, he was released from observation status, having denied thoughts of self-harm. (*Id.*)

On January 27, however, Upthegrove was placed in restraints because he broke his glasses frames and cut himself on the neck and forearm. Upthegrove also reported that he swallowed pieces of his glasses frames. After his outer wounds were cleaned and steri-strips applied, Upthegrove was released from the restraints the next day, January 28, and placed in clinical observation status. (Ex. 1009 (dkt. #48-1) 19; Ex. 1010 (dkt. #48-2) 7.) The progress notes prepared by the nurse that examined him at that time observed that he was not in acute distress, but reported the injuries to PSU. (Ex. 1010 (dkt. #48-2) 7.) A note related to his placement in restraints also included the comment that Upthegrove's "wound was superficial." (Ex. 1009 (dkt. #48-1) 19.)

On January 27, 2020, a psychologist noted that she consulted with the restrictive housing captain about the length of time Upthegrove would remain in restrictive housing. (Ex. 1009 (dkt. #48-1) 3.) On January 28, his psychologist noted that Upthegrove was "struggling" in restrictive housing and with his lawsuit. (*Id.* at 4.) Finally, on January 28, Upthegrove met with his psychiatrist, Dr. Waldstein, and he agreed (1) to try a new psychiatric medication (Depakote) to help with his mood, and (2) to take Benadryl to help with his sleep. (Ex. 1010 (dkt. #48-2) 20.) Defendants represent that the mental health staff are continuing to monitor Upthegrove.

Upthegrove's account of the past three weeks is somewhat consistent with his medical records. He acknowledges cutting his arm and neck with his metal glasses frame and swallowing pieces of the frame, but claims that HSU's wound repair was inadequate, and he did not visit the hospital or have an x-ray taken to determine whether the pieces of his glasses frames are lodged in his digestive tract. Upthegrove also describes a January 24 conversation he had with a captain about his property; apparently, he was told that one of his books, pictures of him and his grandfather, and his grandfather's obituary would be confiscated from him. During this conversation, Upthegrove reports his anxiety and frustration became so great that he began punching himself in the face and head, as well as biting himself. Upthegrove's psychological notes confirms these basic events, but also states that psychological staff spoke with Upthegrove immediately after he started hitting his head and biting his arm, and further reports that Upthegrove was willing to go back to his cell without harming himself at that time. (Ex. 1009 (dkt. #48-1) 4.) Even so,

Upthegrove claims that his mental health treatment has not been adequate because prison administrators have not changed his conditions of confinement.[1]

After considering Upthegrove's representations and the records submitted by defendants, the court will not order Upthegrove to be removed from restrictive housing. A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015) (internal citation omitted). Under the Seventh Circuit approach, a district court engages in a two-step analysis where "[i]n the first phase, the party seeking a preliminary injunction must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Id.* at 661-62.

Upthegrove's and defendants' submissions to date do not suggest a likelihood of success on the merits. Rather, it appears that GBCI staff have been responding adequately to Upthegrove's challenging and ongoing need for mental health treatment. Upthegrove appears to acknowledge that GBCI staff are well-aware of his continuing need for mental health attention, nor does he appear to deny that they have been intervening repeatedly to prevent future instances of self-harm. Those interventions included: (1) numerous visits with mental health clinicians, involving efforts to talk through Upthegrove's thoughts of self-harm and strategizing about how he can avoid harming himself; (2) preventing Upthegrove from accessing instruments of self-harm; (3) restraining him immediately after

---

[1] Upthegrove also adds that another inmate was recently pepper sprayed while he was in full restraints, apparently as evidence that the court should intervene, but this anecdote by itself carries no particular weight as to his own immediate medical needs.

he cut himself with his glasses frames; (4) placing him on observation status when his thoughts of self-harm have been most acute; and (5) working with Upthegrove to find a different psychiatric medication and to try a sleep medication. While Upthegrove may disagree with these methods of responding to a prisoner who is threatening self-harm or who has committed self-harm (or even committed self-harm), they appear to be reasonable interventions as opposed to evidence of a conscious disregard of a substantial risk of serious harm.

Furthermore, Upthegrove's filings suggest that he *might* be less inclined to commit self-harm were he removed from restrictive housing, but a court order requiring him to be removed from restrictive housing could well be counterproductive at present, encouraging Upthegrove to continue to manipulate they system (whether consciously or subconsciously) for his own purposes. The PLRA significantly limits the court's authority to enter injunctions in the prison context, prescribing that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right." *Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quoting 18 U.S.C. § 3626(a)(1)(A)). Here, while defendants have the authority to remove Upthegrove from restrictive housing, it is not apparent that Upthegrove's recent behavior stems from his time in restrictive housing, his seemingly sudden decision to stop taking his psychiatric medication, his ongoing thoughts of self-harm, his desire to manipulate others, or all of the above. Regardless, the court is not in a position to second-guess Upthegrove's 60-day disciplinary separation sentence, which presumably was imposed not only to punish Upthegrove's

behavior, but also to maintain institution safety and security after he assaulted another prisoner and with ongoing mental health monitoring. Accordingly, the court will not grant Upthegrove's motion.

The court will ask for one more update from the parties about Upthegrove's progress on his new medication and as he gets closer to completing his 60-day period of time in restrictive housing. By **February 21, 2020,** defendants are directed to file Upthegrove's most recent medical records under seal. Upthegrove may provide his own status report by that deadline as well, and the court will ensure it is filed under seal as well.

## III.    Next Steps

There are a few issues still requiring the courts attention: defendants' response to the court's order regarding recruiting a neutral expert, defendants' motion for summary judgment, and defendants' motion to transfer. First, defendants' motion for summary judgment based on Upthegrove's failure to exhaust his administrative remedies is currently under advisement, but Upthegrove has not yet responded to defendants' motion to transfer this case to the Eastern District of Wisconsin – Green Bay Division. That court may very well be a more appropriate venue for this lawsuit, particularly given Judge Griesbach's familiarity with the operations at GBCI, the fact that all events related to Upthegrove's claims took place there, and his ongoing incarceration there, the likelihood that Upthegrove's ongoing needs may at some point require an in-person hearing, and GBCI is where all the parties and witnesses likely reside. As such, the court wishes to hear from Upthegrove on that motion. Accordingly, Upthegrove should also respond in writing to

defendants' motion to transfer on or before February 21, 2020. Once Upthegrove responds, the court will promptly resolve that motion, the question of whether to appoint a neutral expert, and defendants' exhaustion motion.

ORDER

IT IS ORDERED that:

(1)   Plaintiff Samuel Upthegrove's motion for an emergency restraining order (dkt. #46) is DENIED.

(2)   The parties have until **February 21, 2020,** to update the court as to Upthegrove's current mental health. Any relevant medical records or lengthy substantive affidavit from mental health care providers to plaintiff shall be filed under seal.

(3)   Upthegrove has until **February 21, 2020,** to respond to defendants' motion to transfer this case to the Eastern District of Wisconsin.

Entered this 7th day of February, 2020.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge