IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SAMUEL UPTHEGROVE,

        Plaintiff,

v.

KEVIN CARR, KEVIN KALLAS,
SCOTT ECKSTEIN, STEVE SCHEULER,
JOHN KIND, RYAN BAUMANN, and
JAY VAN LANEN,

        Defendants.

OPINION & ORDER

Case No. 18-cv-847-wmc

*Pro se* plaintiff Samuel Upthegrove has been proceeding in this lawsuit under the Eighth Amendment, claiming that supervisory officials at Green Bay Correctional Institution ("GBCI") have been acting with deliberate indifference to prisoner mental health care needs since 2016. More specifically, Upthegrove was given leave to proceed against Wisconsin Department Correction ("DOC") Secretary Kevin Carr, DOC mental health director Kevin Kallas, and GBCI supervisory officials Scott Eckstein, Steve Schueler, John Kind, Ryan Baumann and Jay Van Lanen for their alleged failure to ensure that GBCI had adequate staff and policies to respond to mental health needs, especially during periods of lock-down. Now before the court are defendants' motion to amend their answer and for summary judgment (dkt. ##61-62), as well as multiple letters from Upthegrove reiterating his ongoing concerns about his ability to self-harm at GBCI (dkt. ##93, 94).

The court will first address Upthegrove's recent letters, explaining why it has declined to intervene. As for defendants' motions, the court will grant their request to amend their answer. In addition, as set forth below, the court finds that: (1) Upthegrove

released his claims in this lawsuit arising out of events that took place on or before February 2, 2017; and (2) Upthegrove failed to exhaust his claims arising out of events that took place after that date. Accordingly, the court will grant defendants' motion for summary judgment.

OPINION

I.   **Upthegrove's recent submissions**

Before addressing defendants' motions, the court will address Upthegrove's ongoing concerns about the conditions of his own confinement at GBCI. (Dkt. ##93, 94.) Upthegrove has been raising concerns about GBCI's failure to prevent him from self-harm since January of 2019. In response, the court asked the Attorney General's office to follow up promptly with GBCI staff to ensure Upthegrove's safety, which they did. To evaluate whether to grant Upthegrove's various requests for preliminary injunctive relief, the court also received extensive documentation related to how DOC officials have been managing Upthegrove's mental health. The court has since denied Upthegrove a preliminary injunction, finding that GBCI officials were not responding to Upthegrove's ongoing mental health challenges with deliberate indifference, and ultimately denied Upthegrove's follow-up request for emergency relief. (Dkt. ##22, 50.)

In February of 2020, after having observed Upthegrove's repeated tendency to seek out judicial intervention rather than interact meaningfully with mental health personnel, the court further advised Upthegrove that his best course of action going forward would be to avail himself of the mental health resources available through GBCI, noting that further

2

court involvement seemed to be counterproductive to his progress. (Dkt. #50, at 6-7.) Although Upthegrove subsequently continued to alert the court of his concerns about the conditions of his confinement at GBCI, the court's view has not changed. To the contrary, in an order from September 23, 2020, the court again expressly denied Upthegrove's additional requests for court intervention in his mental health treatment, concluding that GBCI's officials were better equipped to address his mental health needs than this court, especially since his ongoing communications to the court did not suggest deliberate indifference to his mental health needs. (Dkt. #85.)

Since the court's most recent inquiries, however, Upthegrove has submitted letters raising similar concerns about unrestricted access to Tylenol and razors, in an apparent effort to obtain further court intervention. (Dkt. ##86,[1] 93, 94.) While the court remains sympathetic to Upthegrove's ongoing mental health challenges, the court's previous inquiries were by no means an invitation for Upthegrove to request court involvement throughout the course of this lawsuit. Far from it. These repeated inquiries have only further undermined Upthegrove's credibility as a chronicler of his mental health needs *and* GBCI's effort to address them. Regardless, since Upthegrove's day-to-day complaints about his access to items of self-harm do not suggest GBCI staff have been ignoring his threats of self-harm or self-harming activities, the court has no basis to act on these submissions. If anything, the court's continued involvement only seems likely to interfere with GBCI's mental health providers' ability to manage Upthegrove's need for treatment

---

[1] In this submission, Upthegrove stated that he wished to voluntarily dismiss this case. However, in a subsequent filing, he clarified that he does not wish to dismiss this case (dkt. #88), so the court denies that motion as withdrawn.

in a confidential manner, as well as distract Upthegrove's efforts to begin making healthier choices for himself. Accordingly, to the extent Upthegrove's most recent submissions were intended renew his earlier requests for preliminary injunctive relief, those requests are denied.

## II. Defendants' motion for summary judgment (dkt. #64)

Defendants previously filed a motion for summary judgment arguing that Upthegrove failed to exhaust his administrative remedies with respect to all of his claims in this lawsuit. On March 25, 2020, the court denied defendants' motion, noting that their exhaustion argument actually relied in large part on the affirmative defense of release. Still, the court allowed defendants to amend their answer to include that affirmative defense and seek summary judgment on that defense alone. (Dkt. #60.) Defendants did just that (dkt. ##61, 62), and having now reviewed the parties' submissions with respect to these renewed motions, the court concludes that all of Upthegrove's claims in this lawsuit have either been released as part of an earlier settlement, *or* were never properly exhausted.

With respect to the release, Upthegrove previously pursued claims against other DOC personnel two other lawsuits before this court -- Case Numbers 15-cv-509 and 16-cv-424. On February 2, 2017, Upthegrove entered into a settlement agreement with the Wisconsin Department of Justice resolving both. *Upthegrove v. Baird*, No. 15-cv-509, dkt. #31 (W.D. Wis.). Specifically, the agreement the parties' reached provided that in

exchange for a payment of $13,000, Upthegrove would not only dismiss those cases, but release:

> All actions described in any pending Notices of Claim filed pursuant to Wis. Stat. § 893.82 and any and all claims whether known or unknown, asserted or unasserted against the State of Wisconsin and any current or former state employee up to and through the date Upthegrove signs this Settlement Agreement.

(Dkt. #34-1, ¶¶ 5, 9.)

In keeping with the terms of this release, the parties agree that defendants are entitled to summary judgment with respect to all events that took place up until the date of that settlement -- February 2, 2017. Regardless, "settlement agreements must be read to give effect to the parties' intent, as expressed in the contractual language." *Boehm v. Svehla*, No. 15-cv-379-jdp, 2017 WL 4326308, at *7 (W.D. Wis. Sept. 27, 2017) (quoting *Seitzinger v. Cmt. Health Network*, 2004 WI 28, ¶ 22, 270 Wis. 2d 1, 676 N.W.2d 426). To his credit, Upthegrove agrees that he has released all claims for events that took place up through February 2, 2017.

Where the parties' remaining disagreement lies is with respect to whether Upthegrove exhausted his administrative remedies with respect to his post-February 2, 2017, claims. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, a prisoner also must "properly take each step within the administrative process" to comply with § 1997e(a). *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing the initial

grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), and filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), that are "in the place . . . at the time, [as] the [institution's] administrative rules require." *Pozo*, 286 F.3d at 1025.

If a prisoner fails to exhaust administrative remedies before filing his lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that plaintiff failed to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Under the regulations applicable to plaintiff's remaining claims, prisoners were required to start the complaint process by filing an inmate complaint with the institution complaint examiner within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09(6). Moreover, the inmate was allowed to "[c]ontain only one issue per complaint, and must have] clearly identif[ied] the issue." *Id.* § 310.09(e).

If the institution complaint examiner ("ICE") rejected a grievance for procedural reasons without addressing the merits, an inmate could then appeal the rejection. *Id.* § 310.11(6). If the complaint was not rejected, the institution examiner was to make a recommendation to the reviewing authority as to how the complaint should be resolved. *Id.* § 310.11(6). The offender complaint was then to be decided by the appropriate reviewing authority, whose decision could also be appealed by the inmate to a correctional complaint examiner ("corrections examiner"). *Id.* §§ 310.12, 310.13. Prisoners were required to appeal a reviewing authority's decision within "10 calendar days," Wis. Admin. Code § DOC 310.13(1), and the corrections examiner then made a

recommendation to the Secretary of the Department of Corrections, who took final action.  *Id.* §§ 310.13, 310.14.[2]

Since February 2, 2017, and before filing this lawsuit, Upthegrove filed only *one* inmate complaint challenging how GBCI officials have handled his mental health needs. In inmate complaint GBCI-2018-15800, which Upthegrove filed on July 23, 2018, he claimed the institution was wrongfully denying him adequate psychotherapy or other mental health treatment, and he sought at least one individual therapy session per week. (Ex. 1004 (dkt. #29-3) 9.).  Agreeing with the ICE's recommendation to dismiss this complaint, the reviewing authority, Marlena Larson, did so on August 13, 2018.  However, Upthegrove did *not* appeal the dismissal of that complaint as required by Wisconsin's exhaustion regulations.

As the court noted in its previous opinion, therefore, defendants are correct that Upthegrove failed to complete the exhaustion process with respect to this inmate complaint.[3]  While Upthegrove claims that appealing GBCI-2018-15800 would have been futile since his other complaints have been unsuccessful, a prisoner's belief that following

---

[2] "Upon good cause, the CCE may accept for review an appeal filed later than 10 days after receipt of the decision."  *Id.* § 310.13(2).

[3] Upthegrove adds that he filed another inmate complaint about mental health care even more recently, GBCI-2019-21877.  Assuming that he properly appealed the resolution of that inmate complaint, however, Upthegrove was required to exhaust all of his available administrative remedies *before* filing this lawsuit.  *Perez*, 182 F.3d at 534-35.  Since Upthegrove filed his complaint on October 15, 2018, GBCI-2019-21877 cannot serve to exhaust his claims for purposes of this case. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (dismissal is the appropriate remedy "even if the plaintiff exhausts his administrative remedies while the litigation is pending") (citations omitted).

prison exhaustion procedures would be fruitless does *not* relieve him of that obligation. *See Perez*, 182 F.3d at 537 ("There is no futility exception to § 1997e(a).").

However, Upthegrove further contends that he *did* exhaust his claims arising from events post-February 2, 2017, although not via GBCI-2018-15800. *First,* Upthegrove directs the court to GBCI-2016-6399, which defendants conceded Upthegrove properly exhausted, as well as another 2016 inmate complaint, GBCI-2016-7336. Because of these complaints, Upthegrove states that he did not believe a new inmate complaint was required in order to sue for events that took place after February 2, 2017, because the events he outlined in the GBCI-6399 and GBCI-2016-7336 amounted to a continuing claim. More specifically, Upthegrove now attests that when he signed the settlement agreement, he did not intend for it to require exhaustion of administrative remedies he had already exhausted if related to ongoing, continuous claims, nor did he understand the written agreement to be placing such a burden on him. (Upthegrove Decl. (dkt. #71) ¶ 4.) Upthegrove further attests that the Assistant Attorney General ("AAG") with whom he discussed the settlement said he would not be precluded from filing a lawsuit about anything that occurred after he signed the agreement. (*Id.* ¶ 6.) Upthegrove adds that he cannot be required to submit a new inmate complaint about issues he originally raised in his 2016 inmate complaints, since Wisconsin's procedures prohibit repeat complaints.

To the extent Upthegrove is attempting to argue that he did not actually release the claims related to his allegations in GBCI-2016-6388, this argument simply fails for the reasons already discussed above, as does Upthegrove's suggestion that he was confused

8

about his requirement to submit a new inmate complaint to exhaust his administrative procedures for events occurring after February 2, 2017.

To start, the record does not support a reasonable finding that Upthegrove *actually* was confused about whether he had to file an inmate complaint before initiating a new lawsuit for events that occurred after his settlement. In 2018, well after Upthegrove executed the settlement agreement, he filed *seven* inmate complaints about the inadequacy of his mental health care, which belies his claimed belief that he either could not or did not need to file a new inmate complaint related to events that occurred after executing the settlement agreement. Moreover, as defendants point out, since Upthegrove explicitly released *all* claims arising from those inmate complaints, logic dictates that if he wanted to pursue a lawsuit for claims related to events post- February 2, 2017, he would need to give prison officials the opportunity to address his grievances related to those subsequent events.

In any event, Upthegrove's 2016 inmate complaints did not serve to exhaust his administrative remedies for his claims in this lawsuit. Upthegrove is correct that when wrongful conduct is ongoing, "prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable conduct is continuing. *Turley*, 729 F.3d at 650 (citations omitted). Instead, "separate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Id*. Although Upthegrove's 2016 inmate complaints did relate to the adequacy of the mental health care he was receiving at GBCI, the operative facts and incidents are

9

different.  Therefore, *Turley* itself precludes an argument that Upthegrove's 2016 inmate complaints served to exhaust his post-agreement claims.

In GBCI-2016-6388, Upthegrove in particular alleged that GBCI was unable to address his specific mental health needs, raising a concern that staff was neither trained in Dialectic Behavioral Therapy ("DBT") nor in the trauma treatment he needed to address his borderline personality and depressive disorders.  (Ex. 1003 (dkt. #29-2) 11-12.)  In GBCI-2016-7336, Upthegrove alleged that numerous conditions of confinement at GBCI were causing his mental health to deteriorate, including being locked in a cell for 23 or more hours a day, the "incessant din" of the cell hall, mass movement, lack of opportunity for socializing, harassment by staff, filthy environment, lack of privacy, easy access to objects for self-harm, staff failure to enforce rules, and a lack of fencing.

Although GBCI-2016-7336 touched on a concern about the adequacy of Upthegrove's mental health care, he did so in the context of his conditions of confinement, not with respect to staffing shortages and lockdown procedures that he now seeks to challenge in this lawsuit.  Likewise, while in GBCI-2016-6388 complained that his specific mental health needs were not being adequately addressed, in this lawsuit Upthegrove is not challenging his inability to access DBT or trauma treatment; instead, he is challenging staffing issues and access to mental health services that generally arose during lockdown procedures put in place post-2017.  Accordingly, Upthegrove is not challenging the same type of continual, wrongful action in this lawsuit, and his 2016 inmate complaints could not serve to exhaust his post-February 2, 2017 claims in this lawsuit.  *See States v. Mahoney*,

594 F. App'x 303, 305 (7th Cir. 2015) ("[T]he one grievance that Stites appealed -- and thus exhausted -- has nothing at all to do with [the] policies [at issue].").

*Second*, Upthegrove maintains that on July 19, 2018, he attempted to file *six* inmate complaints regarding specific inadequacies in the DOC's mental healthcare system, but GBCI's complaint examiner Jodene Perttu "repeatedly refused to process them and eventually refused to return them to Upthegrove." (Upthegrove Decl. (dkt. #71) ¶ 9.) Upthegrove claims that Perttu rejected his six inmate complaints pursuant to Wis. Admin. Code § DOC 310.07(7), which limits inmates to one complaint per week, unless the complaint is about health or personal safety. According to Upthegrove, Perttu wrongfully rejected all six complaints because he was raising issues related to his health and safety. However, Upthegrove *was* able to pursue a claim raising an issue with respect to his health and safety: GBCI-2018-15800, which specifically raised concerns about inadequate psychotherapy. Of course, the problem is that Upthegrove failed to appeal the adverse decision he received from the reviewing authority on August 13, 2018. Moreover, Upthegrove has submitted no evidence suggesting that a DOC officials took *any* steps to prevent him from pursuing a timely appeal of GBCI-2018-15800, nor that Perttu's rejection of those six complaints adversely impacted Upthegrove's ability to appeal GBCI-2018-15800.

For all these reasons, defendants have proven that Upthegrove failed to exhaust his administrative remedies for events that occurred after his February 2, 2017, settlement agreement, and that Upthegrove released all claims for events that took place before February 2, 2017. Accordingly, defendants are entitled to summary judgment with respect

11

to all of Upthegrove's claims in this lawsuit with Upthegrove's claims related to events that took place prior to February 2, 2017, to be dismissed with prejudice, and his claims arising from events that occurred after February 2, 2017, without prejudice.

## ORDER

IT IS ORDERED that:

1. Defendants' motions to amend answer and for summary judgment on the grounds of exhaustion and release (dkt. ##61, 64) are GRANTED.

2. Plaintiff Samuel Upthegrove's motion to voluntarily dismiss (dkt. #86) is DENIED as withdrawn.

3. Plaintiff's requests in his letters (dkt. ##93, 94) are DENIED.

4. Plaintiff's Eighth Amendment claims against defendants for all events up to and including February 2, 2017, are DISMISSED with prejudice. His Eighth Amendment claims from February 2, 2017, through the date he filed this lawsuit are DISMISSED without prejudice.

5. The clerk of court is directed to enter judgment accordingly and dismiss this case.

Entered this 7th day of June, 2021.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge